IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHONDELL PAUL,

                Plaintiff,                Civil Action No.
                                       9:13-CV-1040 (GTS/DEP)
      v.

THOMAS LaVALLEY, Superintendent,
Clinton Correctional Facility; and S.
BROWN, Deputy Superintendent,
Clinton Correctional Facility,

                Defendants.

_____

APPEARANCES:                OF COUNSEL:

FOR PLAINTIFF:

SHONDELL PAUL, *Pro Se*
01-B-1181
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN      CHRISTOPHER J. HUMMEL, ESQ.
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12211


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Shondell Paul, a New York State prison inmate, has commenced this civil rights action against various employees at the Clinton Correctional Facility ("Clinton") pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by causing him to be deprived of the opportunity to exercise outdoors during the winters of 2012-2013 and 2013-2014 as a result of their decisions to deny him weather-appropriate clothing.

Currently pending before the court is a motion brought by the two remaining defendants in this action seeking summary judgment dismissing plaintiff's claims against them. For the reasons set forth below, I recommend that the motion be denied.

I.    <u>BACKGROUND</u>[1]

Plaintiff is an inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 42-2 at 1. Although he is now confined elsewhere, at

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

the times relevant to this action, plaintiff was housed in Clinton, a prison facility located in Dannemora, New York. *Id.*

During the winters of 2012-2013 and 2013-2014, plaintiff was confined in a single-occupancy cell within the special housing unit ("SHU") at Clinton. Dkt. No. 35-2 at 15. Plaintiff alleges that beginning in October 2012 and extending through the middle of April or early May 2013, and then again from October 2013 through May 2014, he was not provided adequate clothing to permit his participation in the one-hour of outdoor recreation allowed for SHU inmates at the facility. *Id.* at 16-17. According to plaintiff, he was issued the following items of clothing for outdoor recreation during those winter months: (1) a sweatshirt, (2) a short-sleeve button down shirt, (3) a pair of pants with no pockets or zipper, (4) cotton socks, (5) a knit cap, (6) canvas sneakers, (7) a coat, (8) rubber galoshes. *Id.* at 18, 50-51. Plaintiff describes the coat provided as "lightweight," having medium-thick material, and not at all effective at keeping him warm. *Id.* at 19. The rubber galoshes made available to inmates have no insulation, and are designed to be waterproof only. *Id.* at 20. Although plaintiff wore the coat to exercise in the winters of 2009 and 2010, during those years he also possessed state-issued thermal underwear to wear outdoors. *Id.* During the 2012-2013 and 2013-2014 winters, however,

there was no additional winter clothing other than the coat or the rubber galoshes available to him to go outdoors, and for this reason he did not exercise during those winter months.[2] *Id.* at 20-21.

During the 2012-2013 and 2013-2014 winters at Clinton, plaintiff was not able to, and did not, exercise in his SHU cell. Dkt. No. 35-2 at 22. During the warmer weather, extending approximately from the middle of April to the end of September, by contrast, he exercised outdoors every day. *Id.* at 24.

Plaintiff filed a number of grievances regarding his complaints of inadequate clothing for winter outdoor recreation during the 2012-2013 and 2013-2014 winters. *See, e.g.,* Dkt. No. 35-2 at 64, 65, 66, 74. Among them was a grievance filed on or about February 5, 2013. Dkt. No. 35-4 at 122. In that grievance, plaintiff specifically requested the following items for his outdoor recreation: (1) winter long underwear, (2) a hat, (3) a scarf, (4) gloves, (5) wool socks, (6) a hooded sweatshirt, (7) a long sleeve shirt, and (8) a parka. *Id.* The facility's Inmate Grievance Review Committee ("IGRC") denied that grievance, relying on an earlier decision rendered by the DOCCS Central Office Review Committee ("CORC") in response to

---

[2]     There is no dispute that a coat and rubber galoshes were available to plaintiff during the winters at issue. Dkt. No. 35-2 at 23.

another one of plaintiff's grievances concerning inadequate clothing. *Id.* at

124. In that denial, the IGRC stated as follows:

> CORC notes that Inmates admitted to the SHU may
> request to have a knit capo [sic] from their property
> within 72 hours of admission if they own one. CORC
> asserts that Inmates are issued clothing sufficient
> for winter weather. CORC asserts that Directive
> #3081 allows work crews to be issued additional
> clothing; however; [sic] there is no requirement to
> issue the same clothing to SHU inmates.

*Id.* Plaintiff appealed the IGRC's denial of his grievance to defendant

Thomas LaValley, who served as the superintendent at Clinton from April

22, 2010, until his retirement on April 24, 2014. *Id.* at 123, 124. On March

7, 2013, defendant LaValley rendered a decision affirming the denial of

plaintiff's grievance and setting forth the following explanation:

> Grievance was investigated by a Security
> Supervisor. Grievant was interviewed by a Security
> Supervisor. Grievant was explained Directive 3081
> and 4933.
>
> Grievant was told personal clothing is not an
> allowable item in the S.H.U. Grievant is provided
> winter clothing when he attends recreation.

*Id.* at 123. Plaintiff appealed defendant LaValley's decision to the CORC,

which also affirmed the denial, explaining, in pertinent part, as follows:

> CORC asserts that Directive #4933 outlines clothing
> items available to inmates in SHU. [Plaintiff] is
> advised to address winter clothing with the unit
> officer or area supervisor.

5

> With respect to the grievant's appeal, CORC
> upholds the discretion of the facility administration
> to prohibit inmates from wearing multiple layers of
> clothing.

*Id.* at 119.

DOCCS Directive #4933 establishes the standards for operation of SHUs within the department's prisons. *See, e.g.,* Dkt. No. 35-4 at 41. In particular, Directive #4933 governs, *inter alia*, what specific state-issued clothing an inmate will be issued immediately upon being admitted into the SHU, what state-issued clothing will be provided after the inmate is secured in an SHU cell, and what additional state-issued items, such as hygiene products, an inmate may possess while in SHU confinement. *Id.* at 45. The directive also specifies what personal property an inmate may be provided within twenty-four hours of admission to the SHU, and then again within seventy-two hours of admission. *Id.* at 46. Following a thirty-day period free of disciplinary sanctions, inmates in the SHU may be permitted specific "additional items/privileges." *Id.* at 47-48. Finally, as relevant to the issues in this matter, Directive #4933 directs that "[e]ach SHU shall operate in accordance with a SHU Operations Manual, which has been approved by the facility Superintendent[, and] . . . will be based on the provisions of [the] directive." *Id.* at 55.

In connection with the pending motion, defendants have submitted two versions of Directive #4933 that were in effect during the 2012-2013 and 2013-2014 winters. Dkt. No. 35-4. The earliest is dated July 26, 2011, *id.* at 41-66, and the second, more recent version, is dated September 26, 2013, *id.* at 22-40. Neither of the versions of Directive #4933 listed thermal or long underwear as permitted items of clothing, and none of the other items plaintiff requested in his grievance in or about February 2013, including "winter underwear, hat, scarf, gloves, wool socks, a hooded sweatshirt, a long sleeve shirt, and a parka," *id.* at 122, were listed as permitted items at any time. *Id.* at 45-46, 47-48.

In addition to, and in accordance with, Directive #4933, the unit at Clinton in which plaintiff was housed[3] during the 2012-2013 and 2013-2014 winters operated under Facility Operations Manual ("FOM") #442. Dkt. No. 35-4 at 2. In support of their motion, defendants have submitted the four FOM #442 versions that were in effect at various periods during the relevant timeframe in this case. *Id.* at 69-116. The earliest FOM #442 in the record is dated April 13, 2010, and specifically allows inmates to be provided two sets (a top and bottom) of long underwear. *Id.* at 71. Defendant Stephen Brown, the Deputy Superintendent for Security at

---

[3]     The unit is referred to by the parties as "Unit 14." *See, e.g.,* Dkt. No. 35-2 at 25.

Clinton beginning on September 26, 2011, did not sign off on that version of FOM #442. Dkt. No. 47-1 at 2. Instead, defendant Brown's predecessor approved the April 13, 2010 FOM #442. Dkt. No. 35-4 at 69. Defendant LaValley did not assume his position as superintendent at Clinton until April 22, 2013, and, therefore, he did not review or approve FOM #442 dated April 13, 2010. *Id.* at 4.

The succeeding versions of FOM #442 in the record were signed by defendant Brown and approved by defendant LaValley. Dkt. No. 35-4 at 4; Dkt. No. 47-1 at 2. Those versions no longer provided that SHU inmates would be issued long underwear. Dkt. No. 35-4 at 83. According to defendant Brown, "at some point in 2010, DOCCS Central Office made a decision that long underwear would not be issued to SHU inmates in DOCCS facilities." Dkt. No. 47-1 at 3. Clinton's FOM #442 dated April 13, 2010, which specifically permitted long underwear to be issued to SHU inmates, remained in effect until the next version was published on March 22, 2013. Dkt. No. 35-4 at 81.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about August 26, 2013, and requested leave to proceed in the matter *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Chief District Judge Glenn T. Suddaby issued a decision on

8

March 27, 2014, granting plaintiff permission to proceed without prepayment of the required filing fee and dismissing the complaint, without prejudice for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A, with leave to replead. Dkt. No. 4. Plaintiff availed himself of the opportunity to cure the deficiencies discerned by the court, with the filing of an amended complaint on April 23, 2014. Dkt. No. 7. Following a review of plaintiff's amended complaint, Chief Judge Suddaby dismissed the pleading in its entirety, specifically citing the lack of personal involvement with respect to defendants LaValley and Brown. Dkt. No. 11 at 12-13.

Plaintiff appealed the judgment dismissing his amended complaint to the Second Circuit Court of Appeals. Dkt. No. 13. Upon review, the Second Circuit vacated the court's judgment only with respect to plaintiff's Eighth Amendment conditions of confinement claim against defendants LaValley and Brown. Dkt. Nos. 15, 16. In its decision, the circuit court directed that "[t]he district court . . . . conduct further proceedings to consider whether Appellant adequately stated an Eighth Amendment claim by alleging that he had no means to exercise in the absence of warm clothing during a period of 300 days over the winters of 2012-2013 and

2013-2014 and whether defendants LaValley and Brown failed to remedy the wrong." *Id.*

Since the issuance of the Second Circuit's mandate, defendants have been served and answered plaintiff's amended complaint, and the parties have completed discovery. Dkt. Nos. 19, 24, 29. On July 1, 2016, defendants filed the currently pending motion for summary judgment seeking dismissal of plaintiff's amended complaint. Dkt. No. 35. In their motion defendants argue that (1) plaintiff's Eighth Amendment claim fails on the merits, (2) they were not personally involved in the decision regarding what clothing he could wear during recreation, and (3) they are entitled to qualified immunity. *See generally* Dkt. No. 35-6. Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.  DISCUSSION

A.  Summary Judgment Legal Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the

nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Eighth Amendment Conditions of Confinement Claim

In support of their request for the entry of summary judgment, defendants contend that no reasonable factfinder could conclude, based on the record evidence, that they violated plaintiff's Eighth Amendment rights by denying his requests for additional clothing for use during outdoor recreation. Dkt. No. 35-6 at 7-17.

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)). While the Eighth Amendment "'does not

12

mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).

A claim alleging that prison conditions have violated the Eighth Amendment must satisfy both an objective and a subjective requirement. *Walker*, 717 F.3d at 125; *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective element, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Walker*, 717 F.3d at 125 ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). In a prison setting, basic needs include "food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (*citing, inter alia, Rhodes*, 452 U.S. at 347). As to the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Walker*, 717 F.3d at 125; *Waldo v. Goord*, No. 97-CV-1385, 1998

WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.).[4] Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Walker*, 717 F.3d at 125; *Waldo*, 1998 WL 713809, at *2.

### 1. Objective Element

Plaintiff alleges that, as a result of defendants' denials of his requests for additional clothing for use during outdoor recreation, he was deprived of out-of-cell exercise during the entire 2012-2013 and 2013-2014 winters. Dkt. No. 35-2 at 16-17. At his deposition, plaintiff testified that he was not provided an opportunity to exercise either in his cell or outside of his cell during the relevant timeframes, except for being offered the opportunity to exercise outdoors. *Id.* at 22. Defendants contest plaintiff's allegations, and submit that the clothing issued to plaintiff was sufficient to protect him from the winter elements, and therefore, plaintiff's health was never at risk because he was provided regular opportunities for exercise with appropriate clothing. Dkt. No. 35-4 at 4, 9; Dkt. No. 35-6 at 5.

---

[4]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

Plaintiff's refusal to participate in recreation, defendants argue, was at his own peril. Dkt. No. 35-6 at 5.

It is well established that the Eighth Amendment protects an inmate's right to exercise. *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985). The contours of that right, however, have not been specifically delineated, and it thus remains somewhat uncertain whether an inmate has an Eighth Amendment right to exercise outdoors.[5] *Williams v. Greifinger* ("*Greifinger*"), 97 F.3d 699, 703 (2d Cir. 1996); *Williams v. Goord* ("*Williams*"), 142 F. Supp. 2d 416, 429 (S.D.N.Y. 2001). Notwithstanding whether plaintiff enjoys a constitutional right under the Eighth Amendment to exercise outdoors, it is abundantly clear that he has a right to some out-

---

[5]    The court in *Anderson* came close to declaring that inmates are entitled to at least some outdoor recreation, explaining as follows:

> No doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather, and equipment for the outdoor exercise areas at Green Haven would enable the SHU prisoners to make better use of their exercise time. However, neither an occasional day without exercise when weather conditions preclude outdoor activity nor reliance on running, calisthenics, and isometric and aerobic exercises in lieu of games is cruel and unusual punishment. With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights.

*Anderson*, 757 F.2d at 36; *see also Sostre v. McGinnis*, 442 F.2d 178, 186 (2d Cir. 1971) (finding that the plaintiff's Eighth Amendment right to recreation was satisfied with one hour of exercise "in a small, enclosed yard, open to the sky").

of-cell exercise, subject to legitimate safety exceptions. *Greifinger*, 97 F.3d at 704; *accord, Gardner v. Murphy*, 613 F. App'x 40, 42 (2d Cir. 2015). Because there is no evidence in the record that plaintiff was afforded any other opportunities for exercise aside from exercising outdoors during the 2012-2013 and 2013-2014 winters, Dkt. No. 35-2 at 22, plaintiff alleges that he was effectively denied all opportunities to exercise over the course of two winters because he was not provided adequate clothing to protect him from the weather.

As defendants must concede, a blanket deprivation of recreation for two full winters would, on its own, clearly satisfy the objective element of an Eighth Amendment claim. *See, e.g., Greifinger*, 97 F.3d at 707-08 (remanding to the district court where there were disputes of fact regarding the safety justifications for denying the plaintiff recreation for over 500 days); *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (upholding the district court's preliminary injunction that required prison officials to release the plaintiff from medical keeplock that permitted him to be out of his cell only ten minutes per week over three and one-half years); *Williams*, 142 F. Supp. 2d at 426 (deciding that summary judgment was not appropriate with respect to whether the plaintiff's twenty-eight day deprivation of exercise was constitutionally significant for purposes of the plaintiff's

Eighth Amendment claim); *compare Green v. Ferrell*, 801 F.2d 765, 771-72 (5th Cir. 1986) (finding that the plaintiff's Eighth Amendment rights were not violated when the defendants denied him out-of-cell recreation for the first fifteen days of punitive confinement). As the parties acknowledge, however, the catalyst for the alleged deprivation was defendants' denials of plaintiff's requests for additional clothing for use during outdoor recreation, coupled with his choice to decline the opportunity for outside exercise in light of the lack of sufficient winter clothing. With respect to this issue, material disputes of fact exist in the record that preclude the entry of summary judgment in favor of defendants.

Plaintiff acknowledges that he had access to the following clothing for outdoor recreation during the winter: (1) a sweatshirt, (2) a short-sleeved shift, (3) a pair of pants, (4) cotton socks, (5) canvas sneakers, (6) a coat, (7) rubber galoshes, and (8) a knit cap. Dkt. No. 35-2 at 18, 50-51. There is no evidence in the record regarding the weight or composition of the sweatshirt, short-sleeved shirt, or pants. It appears to be undisputed that the rubber galoshes provided to SHU inmates have no insulation. Dkt. No. 35-2 at 20. With respect to the coat, plaintiff alleges that it is "lightweight" and constructed of medium-thick material but, in any event, is not effective at protecting him from the winter weather in Dannemora, New

York. *Id.* at 19, 24. Plaintiff generally contends that the regularly issued clothing at Clinton is not sufficient to keep him warm during outdoor recreation. *Id.* at 16. In addition to his statements, plaintiff has submitted an affidavit from a fellow inmate at Clinton who states that he also does not attend outdoor recreation during the winter because of the allegedly inadequate clothing issued by the DOCCS. Dkt. No. 42-2 at 36-37.

Defendants contest plaintiff's characterization of the coat by offering evidence of the coat's design and composition. *See generally* Dkt. No. 35-3 at 5. In his declaration, Michael Graziano, the Assistant DOCCS Commissioner for Correctional Industries and Compliance Standards, describes the coat as follows:

> The Clicker coat is made of an outer shell and a quilted lining. The outer shell is composed of 65% polyester and 35% cotton. The quilted lining is composed of three layers including a nylon taffeta outer layer, a polyester fiber filling, and a backing of nonwoven/spun nylon or polyester. The coat has a zipper front with a knit collar and knit cuffs.

*Id.* at 5; *see also id.* at 68-70.

With respect to the weather during the 2012-2013 and 2013-2014 winters, defendants contend that plaintiff cannot defeat summary judgment without providing "historical weather data" demonstrating that the weather in Dannemora during the relevant timeframe was such that the access to

18

the above-described clothing was insufficient. Dkt. No. 35-6 at 12-13.

While this information would have been helpful had it been supplied to the

court, I have nonetheless taken judicial notice of the fact that the average

Farenheit temperature in Dannemora was 21.72 degrees during the 2012-

2013 winter, and 17.47 degrees during the winter of 2013-2014.[6] U.S.

Climate Data, www.usclimatedata.com/climate/dannemora/new-

york/united-states/usny0362 (last visited Feb. 28, 2017).

    In my view, the dispositive question with respect to the objective

element of plaintiff's Eighth Amendment claim in this case is whether

defendant's denial of plaintiff's requests for additional clothing during two

winters, where the temperature averaged 19.59 degrees Farenheit, was

sufficiently serious in light of plaintiff's allegation that the failure to issue

the additional clothing caused him to be deprived of regular out-of-cell

recreation during those two winters. This question turns on whether the

clothing that was issued to plaintiff was sufficient to protect against the

winter weather for one hour per day. I am unable to say, based upon the

---

[6]    These averages are derived from the full winter season between 2012-2013 and
2013-2014. In particular, I calculated the average temperatures from December 21,
2012 through March 20, 2013, and again from December 21, 2013 through March 20,
2014. Admittedly, this calculation does not cover the entire period for which plaintiff
alleges he was deprived inadequate clothing. Plaintiff does not, however, provide
specific dates for his deprivation. *See, e.g.,* Dkt. No. 35-2 at 16-18. Because the
Second Circuit characterized plaintiff's claims as spanning "300 days *over the winters
of 2012-2013 and 2013-2014*," Dkt. Nos. 15, 16 (emphasis added), in my discretion, I
have relied on the average temperature for the full winter seasons only.

record now before the court, that no reasonable factfinder could conclude that plaintiff was not provided with suitable clothing to permit him to engage in outdoor exercise during the winter months in question. In this regard, defendants' evidence regarding the construction and design of the coat, weighed against plaintiff's unequivocal testimony, as well as the affidavit from another inmate at Clinton, that the regularly issued clothing provided to inmates at Clinton was ineffective against the weather experienced in Dannemora during the 2012-2013 and 2013-2014 winters, presents an issue of material fact that cannot be resolved on a motion for summary judgment.

### 2.    Subjective Element

The pertinent inquiry with respect to the subjective element of an Eighth Amendment claim is whether defendants acted with deliberate indifference. *See, e.g., Farmer*, 511 U.S. at 834. As the Supreme Court has said,

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In this case, the record is replete with evidence that plaintiff notified both defendant LaValley and defendant Brown that the clothing to which he had access was inadequate to protect him from the weather during the winters at Clinton and that failure to provide additional clothing precluded him from participating in outdoor recreation – the only recreation offered – during the 2012-2013 and 2013-2014 winters. *See, e.g.,* Dkt. No. 25-2 at 24-25, 42, 45, 53, 69-71, 65-67, 72, 78-29. Accordingly, there can be no doubt that defendants were aware of the allegation that plaintiff was not being provided an adequate opportunity to exercise over the course of two winters.

As for whether defendants actually drew an inference from plaintiff's allegations that he risked substantial serious harm, I find that reasonable factfinders could disagree with respect to that question. Defendants contend that they investigated plaintiff's allegations and determined that plaintiff had adequate clothing for outdoor recreation. Dkt. No. 35-6 at 14-20. Plaintiff, however, has provided some evidence, which will be discussed more completely below in part III.C. of this report, suggesting that defendants had the authority to issue additional clothing to inmates at Clinton but refused to do so during the relevant timeframe in this case. *See, e.g.,* Dkt. No. 35-4 at 119. Moreover, because plaintiff explicitly

informed defendants that it was not safe for him to exercise outdoors without additional clothing, a reasonable factfinder could infer deliberate indifference on the part of defendants by their denial of the requested additional clothing with which they may have had the discretion to issue. Drawing all inferences in favor of plaintiff, as the court is required to do at this procedural juncture, I find there is sufficient record evidence from which a reasonable factfinder could conclude that defendants denied plaintiff additional clothing knowing that he would be deprived of recreation for extended periods of time.

In sum, in light of the genuine disputes of material facts regarding both the objective and subjective element of plaintiff's Eighth Amendment claim, I recommend that the portion of defendants' motion that seeks dismissal of that claim on the merits be denied.

C.    Personal Involvement

Defendants contend that plaintiff's remaining cause of action asserted against them is also subject to dismissal on the basis of the lack of their personal involvement in the constitutional deprivation alleged. Dkt. No. 35-6 at 17-20.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section]

1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). It is well established, however, that supervisors, like defendants LaValley and Brown, cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this case, pursuant to the Second Circuit's mandate, the court's inquiry is limited to whether defendants LaValley and Brown failed to

remedy plaintiff's allegedly extended deprivation of outdoor recreation by refusing to provide him any additional warm clothing. Dkt. Nos. 15, 16.

There can be no doubt that defendants LaValley and Brown were aware of plaintiff's requests for additional clothing. *See, e.g.,* Dkt. No. 25-2 at 24-25, 42, 45, 53, 69-71, 65-67, 72, 78-29. Defendants contend, however, that they did not have the authority to issue any additional clothing because they were required to comply with Directive #4933, which specifically delineates the clothing and other personal items an inmate in SHU confinement may possess. Dkt. No. 35-2 at 76-77. Indeed, in their declarations submitted in support of the pending motion, defendants flatly deny having any authority to issue any clothing to SHU inmates beyond that permitted by DOCCS #4933. Dkt. No. 35-4 at 4; Dkt. No. 35-5 at 5. This position appears to be supported by Directive #4933, which requires facility operation manuals to comply with the provisions set forth in the directive. Dkt. No. 35-4 at 69. Moreover, defendant Brown suggests that plaintiff's grievances requesting long underwear were denied because of a DOCCS Central Office policy change. Dkt. No. 47-1 at 3.

Some of the grievance responses from the IGRC, defendant LaValley, and the CORC, however, are not necessarily consistent with defendants' position. The IGRC's denial of one of plaintiff's grievances

specifically states that the "former practice of . . . issu[ing]  SHU inmates winter underwear . . . was changed by the Steward of the facility in 2010."

Dkt. No. 42-2 at 42. Defendant LaValley's decision denying the appeal of a different grievance simply noted that plaintiff was informed of Directive #4933 and advised his personal clothing is not permitted in the SHU. Dkt. No. 35-4 at 123. In addition, in its denial of one of plaintiff's grievances, the CORC stated the following:

> CORC asserts that Directive #4933 outlines the clothing available to inmates in SHU. [Plaintiff] is advised to address winter clothing with the unit officer or area supervisor.

> With respect to the grievant's appeal, CORC upholds the discretion of the facility administration to prohibit inmates from wearing multiple layers of clothing.

Id. at 119. Each of the responses from the IGRC, superintendent, and CORC independently could suggest to a reasonable factfinder that individuals, including the facility "steward," "the unit officer or area supervisor," and/or "the facility administration," retained some measaure of discretion in deciding whether inmates in the SHU may be provided

additional clothing for outdoor recreation beyond what is listed in Directive #4933.[7]

There is no evidence in the record that independently supports defendant Brown's recollection that the DOCCS Central Office altered a policy in 2010, leading to the denial of plaintiff's request for long underwear beginning in the winter of 2013. Dkt. No. 47-1 at 3. Plaintiff argues that the Central Office had never promulgated a policy, through a DOCCS directive or otherwise, that permitted inmates in the SHU to be issued long underwear. Dkt. No. 52 at 7-8. Rather, plaintiff contends, in their discretion the Clinton facility administration unilaterally made a provision in the April 13, 2010 FOM #442 for the issuance of long underwear to SHU inmates. *Id.* That provision did not comply with the letter of Directive #4933, which did not specifically allow for long underwear to be issued to SHU inmates. *Id.* Plaintiff argues that, because the relevant DOCCS directives never permitted inmates in the SHU to possess long underwear, the FOM #442 that called for long underwear is evidence that prison administration, including defendants LaValley and Brown, retained the authority to issue

---

[7]     Moreover, in one of its denials to one of plaintiff's grievances, the IGRC indicated to plaintiff that there is "no requirement" that SHU inmates be issued long underwear. Dkt. No. 35-2 at 75. This statement, which does not explicitly inform plaintiff that long underwear is *prohibited*, seems to leave open the possibility that long underwear may be permitted under certain circumstances.

clothing above and beyond that which is specifically provided for in the governing DOCCS directives. *Id.*

In support of this contention, plaintiff points to the denial of one of his grievances filed at Clinton in which he requested thermal underwear. Dkt. No. 42-2 at 42. The IGRC's response stated that "[t]he former practice of Clinton . . . was to issue SHU inmates winter underwear. This was changed by the Steward of the facility in 2010." *Id.* The IGRC's response did not rely on a DOCCS Central Office policy change and, instead, suggested the change in practice with respect to long underwear was at the discretion of Clinton administration. Moreover, a memorandum authored by defendant Brown to an inmate identified as "Walker, T." on March 22, 2013, stated that "[Clinton] no longer issue[s] long underwear to inmates in SHU and no exceptions will be made." Dkt. No. 42-2 at 47. While there is no record evidence that purports to explain this statement any further, in the absence of any explanation, and taking into consideration other record evidence, it could be construed by a reasonable factfinder as supporting plaintiff's contention that none of the relevant DOCCS directives ever explicitly either permitted or, conversely, prohibited SHU inmates from being issued long underwear, and that Clinton's practice of doing so was promulgated by facility administrative employees

at their discretion.[8] Finally, it is worth noting that DOCCS Directive #4933

sets forth "*minimum* conditions of confinement" for prisoners in the SHU.

[Dkt. No. 52-1 at 20](). In light of this language, a reasonable factfinder could

well accord less weight to defendants' reliance on that directive for support

of their claim that they did not have the authority to issue any clothing

other than that explicitly specified in the document. Indeed, there is

evidence that plaintiff and at least one other Clinton inmate were permitted

to continue possessing and wearing their long underwear long after the

alleged DOCCS Central Office policy change for alleged security reasons.

[Dkt. No. 42-2 at 8](), 38.

In light of all the record evidence in this matter, I find a genuine

dispute of material fact exists with respect to whether defendants LaValley

and Brown had the authority to issue to SHU inmates, including the

plaintiff, additional clothing that was not specifically provided for in

Directive #4933. Accordingly, I recommend that defendants' motion be

denied to the extent it seeks dismissal of plaintiff's amended complaint on

the basis of lack of personal involvement.

---

[8]    I note that the earliest version of DOCCS Directive #4933 is dated July 26,
2013. [Dkt. No. 35-3 at 41-66](); [Dkt. No. 35-4 at 41-66](); [Dkt. No. 35-5 at 39-64](). To the
extent any earlier version of DOCCS Directive #4933 specifically provided that SHU
inmates could be issued long underwear, that evidence has not been provided to the
court.

D.    Qualified Immunity

Defendants' final argument is that dismissal of plaintiff's complaint is appropriate because they are entitled to qualified immunity from suit. Dkt. No. 35-6 at 21-24.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985),

the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011). Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a statutory or constitutional right, and if so, whether that right "was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (citing *Reichle*, 132 S. Ct. at 2093). The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted). "To this end, a plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Terebesi*, 764 F.3d at 230 (quoting *al-Kidd*, 131 S. Ct. at 2083). However, "[e]ven where the law is

'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted). This "objective reasonableness" part of the test is satisfied if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this case, the constitutional right in question is plaintiff's right to regular outdoor exercise during the winter.[9] While I have found no Supreme Court or circuit court case law declaring that prisoners enjoy that specific right,[10] there is no doubt that prisoners have a constitutional right

---

[9]    Although plaintiff's specific allegations focus on the clothing that he was (or was not) provided for recreation during the winters of 2012-2013 and 2013-2014, I have construed the constitutional right at issue to center upon his access to recreation in the winter months because the consequence of the alleged inadequate clothing was the deprivation of recreation over the course of two winters. The Second Circuit's decision remanding this action for further proceedings has also influenced my perception of the scope of this action. *See* Dkt. No. 15 ("The district court is directed to conduct further proceedings to consider whether Appellant stated an Eighth Amendment claim by alleging that he had *no means to exercise* in the absence of warm clothing during a period of 300 days over the winters of 2012-2013 and 2013-2014[.]" (emphasis added)).

[10]    *See, e.g., Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (finding that prisoners have a constitutional right to out-of-cell exercise without distinguishing between indoor and outdoor recreation); *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (affirming the district court's finding that "the denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment" but

to out-of-cell exercise subject to facility safety and security concerns.
*Greifinger*, 97 F.3d at 704 n.5); *accord, Gardner*, 613 F. App'x at 42.
Because there is record evidence that plaintiff was not provided any
opportunity to exercise out of his cell during the relevant periods of time,
and the only opportunity for recreation was outdoors, Dkt. No. 35-2 at 22, I
find that the clearly established right to regular out-of-cell recreation is
implicated in this case and appropriately frames the issue for qualified
immunity.

As was discussed above in part III.B.1. of this report, I find there are
genuine disputes of fact to be resolved with respect to whether defendants
violated plaintiff's right to recreation during the winters of 2012-2013 and
2013-2014. Accordingly, for purposes of the qualified immunity analysis, I

---

specifically limiting its holding to the facts of the case at hand and warning that it did
not, on appeal, consider "it necessary to decide whether deprivation of outdoor
exercise is a per se violation of the eighth amendment" (internal quotation marks
omitted)); *but see Frazier v. Ward*, 426 F. Supp. 1354, 1369 (N.D.N.Y. 1977)
(concluding that, *inter alia*, "prolonged deprivation for at least one hour a day from
outdoor exercise . . . [is] unreasonable and inhumane . . . and constitute[s] cruel and
unusual punishment violative of the Eighth Amendment"); *Rhem v. Malcolm*, 389 F.
Supp. 964, 972 (S.D.N.Y. 1975) (concluding that the plaintiffs were entitled to use the
outdoor recreation yards year-round, and not just between late May and mid-October,
in order to "bring their opportunity for physical exercise up to constitutional standards").
I remain mindful that the two district court cases from within this circuit declaring that
the Eighth Amendment requires outdoor recreation, including during the winter months,
do not constitute "clearly established law" for purposes of qualified immunity. *See
Greifinger*, 97 F.3d at 706 ("[W]e note that this court has previously indicated that the
germane law in determining whether a right is clearly established for purposes of
qualified immunity is the decisional law of the Supreme Court and the applicable circuit
court." (quotation marks omitted)).

cannot conclude at this juncture that defendants did not violate plaintiff's clearly established right.

Turning now to the second consideration for qualified immunity – whether defendants should have reasonably been aware that their actions violated plaintiff's clearly established right – I am again persuaded that reasonable factfinders could render competing determinations, and could find that defendants reasonably should have been aware that denying plaintiff additional clothing for outdoor recreation during winter in Dannemora, New York, would violate his Eighth Amendment rights.

Defendants contend that their actions were reasonable because (1) they relied on the relevant DOCCS policies and (2) they were "advancing a penological interest" – namely, safety concerns presented by the tight-fitting nature of long underwear. Dkt. No. 35-6 at 22-24. "When officials follow an established prison policy. . ., their entitlement to qualified immunity depends on whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting the directive." *Barnes v. Furman*, 629 F. App'x 52, 57 (2d Cir. 2015) (quotation marks omitted). Thus, the court is left to consider the safety considerations on which defendants rely for denying plaintiff's request for additional clothing for use during outdoor recreation. The

evidence supporting the contention that defendants acted pursuant to penological interests includes only the declarations submitted by defendants LaValley and Brown. Dkt. No. 35-4 at 5; Dkt. No. 41-1 at 3. Specifically, defendant LaValley states that, at the time he denied plaintiff's request for additional clothing, he was operating with the understanding that DOCCS Central Office changed the policy "because tight-fitting clothing that is worn in layers poses a security risk to the facility as contraband and weapons can be more easily concealed within such clothing endangering the security of the facility and safety of the staff and inmates." Dkt. No. 35-4 at 5. Similarly, defendant Brown states the following with respect to the safety considerations concerning long underwear:

> As I recall, the reason for [the DOCCS Central Office's change in policy] was a security concern. Searching an inmate for contraband or weapons is made more difficult when an inmate is wearing tight-fitting or layered clothing such as long underwear because it is much easier to conceal contraband or weapons in such clothing. As a result, such clothing posed a significant security risk to DOCCS facilities because it endangered the health and safety of the correctional staff and inmates.

Dkt. No. 47-1 at 3.

Plaintiff calls into question those statements by asserting that he and other inmates housed in the SHU were permitted to possess their long

34

underwear after the DOCCS Central Office allegedly changed their policy. In particular, plaintiff contends as follows:

> From the time the defendants discontinued the issue of long underwear until the time I was forced to discard my long underwear due to wear and tear I received routine cell searches on the average of one (1) per thirty (30) days and I never had my long underwear confiscated for security reasons. I also continued to wear my long underwear to the exercise cages. My long underwear were never confiscated and no memorandum was ever issued informing inmates of statewide ban of long underwear due to security concerns.

Dkt. No. 42-2 at 8. In addition, plaintiff has submitted an affidavit from Tyrone Walker, a fellow inmate who has been confined at Clinton since January 2008. *Id.* at 37-38. Inmate Walker states that he was permitted to possess and wear the long underwear that he was issued upon arriving at Clinton, and the other pairs he was issued in 2009 and 2010, "for two extra years" after "the administration at [Clinton]" stopped issuing them. *Id.* These circumstances undermine defendants' claim that they relied upon the security concerns articulated in denying plaintiff's request for additional winter clothing.

Where there are factual disputes in the record with respect to the safety considerations cited to by defendants, extending qualified immunity to them at the summary judgment stage is not appropriate. *See Gardner*,

613 F. App'x at 43 (reversing the district court's determination that the defendants were entitled to qualified immunity because reasonable jurors could find that the limitation placed upon the plaintiff during his outdoor recreation was unreasonable); *Edwards v. Arnone*, 613 F. App'x 44, 47 (2d Cir. 2015) (reversing the district court's conclusion that the defendants were entitled to qualified immunity because the district court "did not adequately consider whether material factual disputes remained as to the adequacy of the safety justification for the prison's policy"); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (citations and quotation marks omitted)). In my view, reasonable factfinders could disagree as to whether defendants' decision to provide inmates with only a shirt, socks, a sweatshirt, pants, sneakers, a coat, rubber galoshes, and a knit hat – all of which were specifically permitted in the relevant DOCCS directives but may not have been exclusive of any additional clothing issued by facility administration in their discretion pursuant to FOM #442 – for their outdoor

recreation during the winter months in Dannemora, New York, was reasonable in light of the safety concerns cited by defendants. While I am mindful that courts should grant significant deference to prison officials concerning the safety and security of facility operations, *Anderson*, 757 F.2d at 35, once again, I note that the defendants' reliance upon security concerns is inconsistent with the fact that, even after the DOCCS Central Office purportedly changed a policy that no longer permitted SHU inmates to have long underwear, inmates at Clinton continued to possess and wear their earlier-issued long underwear during outdoor recreation. In addition, the FOM #442 permitting Clinton SHU inmates to be issued long underwear was not revised to reflect the purported change in policy until 2013. Defendants have provided no explanation for these circumstances, and additionally have failed to articulate any penological rationale (safety or otherwise) for not issuing any of the other additional clothing items requested by plaintiff for use during outdoor recreation. Accordingly, I find that reasonable factfinders could disagree as to whether there was a legitimate safety concern regarding additional clothing for inmates in the SHU during outdoor recreation. For that reason, I recommend against granting qualified immunity to defendants.

IV.  SUMMARY AND RECOMMENDATION

Defendants seek dismissal of the only claim that remains pending before the court arising out of plaintiff's amended complaint on the merits, lack of personal involvement, and qualified immunity. In light of my conclusion that reasonable factfinders could render differing determinations with respect to all of the arguments cited by defendants, I am unable to recommend dismissal of plaintiff's amended complaint at this juncture. Accordingly it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 35) be DENIED and that the matter be set down for trial.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[11]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[11]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      March 2, 2017
              Syracuse, New York

_____
David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

## I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

## II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

## III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.